UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                           )
                                                 )
    SUSAN A. ROBINSON                 )    Case No. 06-10618-SSM
                                                 )    Chapter 13
                  Debtor    )

**MEMORANDUM OPINION**

A hearing was held on March 9, 2007, on the application of Tommy Andrews, Jr., P.C., for approval and payment of supplemental compensation as attorney for the debtor in the amount of $13,351.20.  The debtor, who filed a written opposition to the application, was present in person.  The chapter 13 trustee, who filed a response stating that the plan did not have sufficient funds to pay the requested fees, was likewise present.

Background

Susan A. Robinson ("the debtor") filed a voluntary petition in this court on June 12, 2006, for adjustment of her debts under chapter 13 of the Bankruptcy Code.  The petition, schedules, and plan were prepared by the law firm of Tommy Andrews, Jr., P.C., whose attorneys are experienced consumer bankruptcy practitioners.  The disclosure of compensation filed with the petition stated that the agreed fee to represent the debtor was $3,000.00, of which $600.00 had been paid prior to the filing of the petition, and $2,400.00 remained due.  Among the services covered by the fee were:

> Analysis of the debtor's financial situation, and rendering advice to the debtor
> in determining whether to file a petition in bankruptcy, including: preparation
> and filing of <u>any</u> petition, schedules, statement of affairs <u>and plan</u> which may
> be required.

1

Disclosure of Compensation of Attorney for the Debtor(s), ¶ 6(a) and (b) (emphasis added).
This straight-forward text was then qualified and expanded upon by ten additional paragraphs that contained, among others, the following statements buried within them:

- "The above disclosed fee for legal services is the minimum amount for the client to pay."

- "Except as noted above, the fee and original retainer is an estimate and is in no way considered a flat fee."

Lengthy paragraphs separately addressed cases filed in the U.S. Bankruptcy Courts in Virginia, the District of Columbia, and Maryland.  Relevant to cases filed in Virginia, the disclosure stated that representation did not extend to a large number of matters that most consumers would consider a routine and necessary part of a chapter 13 case, including "representation of the Debtor(s) at the confirmation hearings," "[n]egotiations with parties concerning confirmation," and "negotiations with secured creditors to reduce to market value."  The disclosure further asserted that any such excluded matters "will require a separate retainer" — notwithstanding that the local rules of this court require the attorney for the debtor to appear at <u>every</u> hearing in the case unless granted leave to withdraw and do <u>not</u> permit the attorney to condition such appearance on payment of an additional "retainer." Local Bankr. R. 2090-1(G)-(H).

      Following the meeting of creditors on July 18, 2006, the trustee and the debtor's former husband, Ross R. Robinson, filed objections to confirmation.  The debtor then filed a modified plan on August 5, 2006.  The plan required the debtor to pay the trustee $900 per month for one month, followed by $1,335 for 59 months, plus a $9,770 lump sum payment in the third month.  From the payments received, the trustee would be paid his statutory

commission. Debtor's counsel would be paid "$2,400.00 balance due of the total fee of $3,000.00." A $9,770 domestic support obligation owed to Mr. Robinson would be paid over two months. The remaining funds would be paid pro rata to creditors holding allowed unsecured claims, with the estimated distribution being 51 cents on the dollar. The trustee and Mr. Robinson objected to confirmation, and the trustee also filed a motion to dismiss. The issues were whether the $9,770 liability owed to Mr. Robinson for back child support "first became due" before or after the filing of the petition and whether an $80,601 liability owed to Mr. Robinson for his half-share of the equity in the former marital residence was a "domestic support obligation" that would have to be paid in full in the plan. The attorney for the debtor filed a 19-page memorandum in support of his client's position and ably represented Ms. Robinson at an evidentiary hearing that was held on September 19, 2006, and continued to September 27, 2006, for a ruling. The court determined that the child support obligation "first became due" before the chapter 13 petition was filed (with the result that it could properly be treated in the plan) and that the $80,601 obligation to pay Mr. Robinson half of the equity in the former marital residence was not a domestic support obligation (and was therefore a general unsecured claim that could be compromised by the plan). The court accordingly overruled the objections to confirmation, denied the motion to dismiss, and confirmed the modified plan on September 28, 2006.

The application before the court was filed by the debtor's attorney on April 9, 2007, and covers the period through February 28, 2007.[1] It seeks approval of $16,351.20 in compensation and reimbursement of expenses, less the $600.00 paid by the debtor as a

---

[1] There is one time entry for August 17, 2007, but this is assuredly a typographical error.

3

retainer and the $2,400.00 paid by the trustee under the plan, for a net of $13,351.20 to be paid by the trustee as supplemental compensation. The application states, "Debtor's Plan contains sufficient provisions to pay these fees without prejudice to creditors, and has been modified to include room for administrative expenses to be paid through the Chapter 13 plan." Attached to the application are time records from the beginning of the case reflecting 103.89 hours of attorney and paralegal time billed at hourly rates ranging from $85.00 per hour to $225.00 per hour, for a "blended" rate of $156.85 per hour. The application additionally requests reimbursement for postage and copying costs in the amount of $55.72. A breakdown of the fees relative to the significant events in the case is as follows:

| | |
|---|---|
| Through the meeting of creditors | $2,365.06 |
| From meeting of creditors through filing of amended plan. | $3,023.75 |
| From filing of amended plan through conclusion of confirmation hearing. | $10,653.17 |
| Miscellaneous post-confirmation matters, including claim review. | $253.50 |
| Total | $16,295.48 |

The trustee, as noted, has filed an objection stating that there are insufficient funds in the plan to pay the requested fees. The debtor, for her part, filed an objection stating that it was her understanding that the case would cost $3,000.00; that neither the attorney nor any member of his office had ever notified her, either in writing or orally, that additional fees were being incurred or would be billed; and that the law firm had not responded to her numerous requests for a copy of the fee agreement. She additionally complained that the copy of the fee application that had been mailed to her was missing several pages and that

4

there were several issues in the case that the law firm had not attended to despite her requests.

The evening prior to the hearing, the law firm provided Ms. Robinson with a copy of the contract for legal services (captioned "Virginia Retainer Agreement") signed by her on June 8, 2006.[2] The original of the contract was offered in evidence at the hearing. It is a single-page, visually dense, non-paragraphed document printed in what appears to be 9-point type. It begins by stating, "For and in consideration of the professional and legal advice to be rendered to me/us: I /We agree to pay the [law firm] the sum of **$600 up front and $2,400 in plan**." (bold face in original). Nine sentences further along into the contract is a bold-faced statement:

> **I/We acknowledge that the above fee is for debt relief services, to include analysis of [the] client's financial situation, rendering advice to the client in determining whether to file a petition in bankruptcy; preparation and filing of any petition, schedules, statement of financial affairs[,] and plan; providing Trustee with verification of income and other relevant information prior to the 341 Meeting of Creditors; representation of client at the first scheduled 341 Meeting of Creditors**.

This is immediately followed by the statement (in regular rather than bold-face type):

> The above stated fee is an estimate and in no way may be considered a flat fee. The hourly rate of $225/hr for each attorney and $110/hr for each paralegal is the rate schedule . . . .

Some five sentences later (approximately half-way through the document), the following text occurs, again in regular rather than bold-face type:

> The above fee and this retainer do not include Amending Schedules, Exemption Planning, Preparation and Attendance of [*sic*] Confirmation Hearings, Adversary Proceedings, Motions for Relief from Automatic Stay,

---

[2] According to the time records, this was the date she first met with the attorney.

5

>   Conversions, Contested Matters or Appeals, Matters unlike the Regular
>   Practice of Bankruptcy, or other Motions.  All such matters and unstated
>   matters, in order for this law office to represent me/us, requires a separate
>   retainer and shall be billed at an hourly rate of $225/hr for each attorney and
>   $110/hr for each paralegal in accordance to [*sic*] Local Bankruptcy Rules.

At the hearing, the debtor reiterated that she had not been aware that additional fees would be charged for the work the law firm was doing and that she was never invoiced for those fees as they were incurred.  She also stated that her budget was already very tight and would not permit an increase in plan payments sufficient to cover the requested fees, although she suggested that based on a recent pay increase she might be able to pay an additional $100 a month into the plan.

<u>Discussion</u>

A.

Much has been written by other judges in this district concerning chapter 13 supplemental fee applications, and little point would be served by repeating the points so ably made.  *See, e.g., Boleman Law Firm, P.C. v. United States Trustee*, 355 B.R. 548 (E.D. Va. 2006); *In re Bryant*, 346 B.R. 406 (Bankr. E.D. Va. 2006); *In re Harris,* 1998 WL 408896 (Bankr. E.D. Va. 1998).  Briefly, debtor's counsel in a chapter 13 case may be compensated from the estate "for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor as well the other factors set forth [in § 330 of the Bankruptcy Code]."
§ 330(a)(4)(B), Bankruptcy Code.  The "other factors" specified in the statute are:

>   the nature, the extent, and the value of such services, taking into account all
>   relevant factors, including—
>       (A) the time spent on such services;
>       (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3), Bankruptcy Code.[3]

In order to be awarded compensation payable from the estate, a professional must ordinarily submit a formal fee application setting forth, among other information, "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Because chapter 13 consumer cases tend to require a predictable amount of work, this district, like many districts, has provided a simplified procedure for approval of fees that do not exceed a specified amount, commonly referred to as a "no-look" fee. In this district, that amount is currently $3,000.00 for cases

---

[3] A number of opinions in this district, citing Judge Shelley's opinion in *In re Great Sweats, Inc.*, 113 B.R. 240 (Bankr. E.D. Va. 1990), have stated that professional compensation in bankruptcy cases is governed by the 12-factor test articulated by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). *Great Sweats*, however, was decided before the amendments to § 330, Bankruptcy Code, made by the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394. Previously, § 330 of the Bankruptcy Code had merely stated that compensation was to be determined "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a [bankruptcy] case." The 1994 amendments set forth the five specific factors that are now §§ 330(a)(3)(A), (B), (C), (D), and (F). A sixth factor was added by BAPCPA. § 330(a)(3)(E), Bankruptcy Code. Thus, it seems clear that Congress has enacted its own six-factor test, which is the test that the author of this opinion applies rather than the *Barber* test.

filed on or after October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[4]  Interim Proc. 2016-1(C) (Bankr. E.D. Va., Mar. 27, 2006).  Provided the total fee in the case does not exceed the "no-look" amount, and provided the amount requested is set forth in the plan and is consistent with the disclosure of compensation that the attorney is required to file under Rule 2016(b), a formal fee application is not required.  Effectively, the plan and the Rule 2016 statement are treated as a fee application, and the order confirming the plan is treated as also approving the fee.

Counsel are by no means restricted to the "no-look" fee—the procedure is simply intended to simplify the application process for the large majority of cases in which the "no-look" amount will provide reasonable compensation.  If the attorney knows from the inception of the case that unusual issues are present, the attorney may contract with the client for a higher fee, but in that event must submit a formal fee application.  Additionally, if the need arises in the course of the case for services that were not reasonably anticipated when the "no-look" fee was requested and approved, the attorney may file an application for additional compensation.  Interim Proc. 2016-1(C)(8).  In this district, such supplemental applications must be supported by contemporaneous time records from the inception of the case and must otherwise conform to the requirements of Bankruptcy Rule 2016(a).  Additionally, an application for supplemental compensation must state whether allowance and payment of the additional fees would reduce the dividend being paid to unsecured

---

[4]  The figure had previously been $1,500.00, but the court recognized that BAPCPA placed many new requirements on debtors and their attorneys that would likely require a significantly increased expenditure of time.

creditors and, if so, whether the plan may be modified to pay the requested fees without reducing the dividend.  Loc. Bankr. R. 2016-1(C)(1).

B.

Of particular concern to the court in this case is the affirmative representation in the application that the plan "contains sufficient provisions to pay [the requested] fees without prejudice to creditors, and has been modified to include room for administrative expenses to be paid through the Chapter 13 plan."  This representation is plainly false, as the chapter 13 trustee correctly notes.  At the hearing, debtor's counsel conceded that the plan was not sufficiently funded to pay the requested fees without reducing the dividend to unsecured creditors; however, he offered no explanation for why the application asserted otherwise.  It seems clear that debtor's counsel made <u>no</u> analysis or inquiry, prior to submitting the fee application, of the effect granting the application would have on distributions under the plan.  In short, the representation that there would be no prejudice to creditors constituted nothing more than a rote recitation of boiler-plate language built into a word processing template.  The court, quite simply, expects more of counsel.  If there is any doubt on counsel's part, inquiry of the chapter 13 trustee *prior* to filing the application would assure that correct information was provided to the court and to creditors.[5]  Creditors who might object if they knew their ox was in danger of being gored would obviously have no motive to scrutinize

---

[5] If the plan is not sufficiently funded to pay the fees without prejudice to creditors, but could be modified—either by increasing plan payments or extending the term of the plan, or both—counsel should communicate with the debtor *prior* to filing the fee application and determine whether the client is willing and able to amend the plan to provide for the fees.  A mere assertion in the application that the plan *could* be amended to accommodate the additional fees is worthless if the client is unwilling to amend the plan or is unable to make the increased payments required.

9

the fee request if assured that their ox was safe. Does this mean that a fee application can never be approved if granting it would reduce the dividend to unsecured creditors? Of course not. But at the very least it does require that creditors be plainly and conspicuously informed of what is afoot.[6] Where, as here, that was not done, the court will not approve payment of additional fees to be paid through the plan, although—if the fees are otherwise appropriate—the court may approve them as reasonable and let the attorney collect them from the debtor at the conclusion of the case.

C.

That leaves the issue in this case of whether the fees are reasonable taking into account not only "the benefit and necessity of such services to the debtor" and the other factors set forth in § 330(a)(3), Bankruptcy Code, but also the fee agreement between the debtor and the attorney. In this connection, the amendments to the Bankruptcy Code made by BAPCPA require that debtor's counsel, not later than 5 business days after first providing services to a debtor, and prior to filing a bankruptcy petition, execute a written contract that "explains clearly and conspicuously . . . (A) the services [the attorney] will provide [the

---

[6] *See* Loc. Bankr. R. 2016-1(C)(1) (requiring "that any prejudice to any creditor as the result of an award of additional attorney's fees shall be completely, fully and adequately disclosed to all creditors and parties in interest."). It would be appropriate, for example, that the notice to creditors state as follows:

> George Wythe Law Offices, P.C., has filed an application with the court for approval and payment of $5,000.00 in additional compensation as attorney for the debtor for the period from June 30, 2007 to December 31, 2007. **If the application is granted, the dividend being paid on unsecured claims will be reduced from approximately 80% to approximately 55%.**

10

debtor]; and (B) the fees and charges for such services, and the terms of payment." § 528(a)(1), Bankruptcy Code.[7]

In this case, the law firm provided the debtor a written contract at the time of the first office conference. However, the agreement, although comprehensive and detailed, could hardly be characterized as clear. In terms of formatting, it consists of a single, visually-dense, small-type, 902-word paragraph covering a number of issues which are not addressed in any organized or logical manner. It is true that a careful reader, upon reading the entire document, would probably come to understand that the $3,000 fee so prominently set forth at the top of the document is effectively a <u>minimum</u> fee for the case. But it is doubtful that a consumer debtor who has never been through the bankruptcy process and is not a sophisticated purchaser of legal services would have any real understanding, even after reading the contract, just how much actually <u>is</u> covered by the retainer. Put another way, since a consumer debtor does not know what services are likely to be needed, such a consumer would have no way of knowing whether the stated exclusions are likely to apply, and what the chances are of receiving a bill that (as here) vastly exceeds the retainer.

---

[7] The actual terms used by the statute are "debt relief agency" to refer to the attorney and "assisted person" to refer to the consumer debtor. Both of these are terms of art. *See* § 101(12A) and (3), Bankruptcy Code. Although some courts have held that the restrictions placed by BAPCPA on the <u>advice</u> that a debt relief agency can give are unconstitutional as applied to attorneys, *see Hersh v. United States*, 347 B.R. 19 (N.D. Tex. 2006) and *Zelotes v. Martini*, 352 B.R. 17 (D. Conn. 2006), there can be little doubt that the requirement for a written contract applies to attorneys representing consumer debtors and is constitutional. *In re Norman*, 2006 WL 3053309, *4 (Bankr. E.D. Va. 2006) (stating that debtor's counsel qualifies as a debt relief agency and thus must comply with the requirements of § 528(a)(1)); *but see Milavetz, Gallop & Milavetz P.A. v. United States*, 355 B.R. 758 (D. Minn. 2006) (holding the advice restrictions of § 528(a) unconstitutional as applied to attorneys <u>and</u> the debt relief agency provisions of BABCPA inapplicable to attorneys).

The agreement, moreover, is internally inconsistent on several points.  It states, for example, that the services to be provided for "the above fee"—the $3,000—include "preparation and filing of <u>any</u> . . . plan." (emphasis added).  The fee application, however, seeks approval of a total of $5,388.81 for services through the filing of the modified plan.  Putting to one side whether the term "any . . . plan" would fairly apply to <u>post</u>-confirmation plan modifications, it is difficult to see why it should not apply to modified plans filed <u>prior</u> to confirmation to address objections to the initial plan or issues raised at the meeting of creditors.  Additionally, the modified plan itself states that the "total" fee in the case was $3,000.  Regardless of whether the attorney may be entitled to additional compensation for services <u>subsequent</u> to the filing of the plan, the "total" amount set forth in the plan must surely be read as encompassing all services provided <u>through</u> the filing of the plan, together with any  routine services necessary to get to confirmation and, ultimately, discharge.  For those reasons, the court will approve only $3,000 in compensation through the filing of the modified (and ultimately confirmed) plan.  Since that amount has already been paid, no further compensation is appropriate for services provided through the date the modified plan was filed.

That leaves for consideration the $10,653.17 in fees for litigating the objections to confirmation and the motion to dismiss as well as the $253.50 for miscellaneous post-confirmation matters, including claims review.  The objections and motion involved the application of changes made to the Bankruptcy Code by BAPCPA.  Even though some of those issues were probably not novel in the true sense—a "domestic support obligation," for example, is for the most part simply a new name for a type of debt that had to be paid in full

in chapter 13 even before BAPCPA—nevertheless the questions of when the child support claim "first arose" and whether the requirement to pay the debtor's former husband one-half of the equity in the house was "in the nature" of support were highly fact-dependent.  It was therefore both reasonable and prudent for debtor's counsel to survey the reported cases to find fact patterns close to those raised by this case.  At the same time, it is probably true, as the debtor suggested at oral argument, that a significant portion of the 29.1 hours in legal research for which compensation is requested represented a "learning curve" for which she should not have to pay full freight, since the knowledge acquired by counsel would also benefit future clients.  A mathematically-rigorous adjustment is probably not possible, but the court, having reviewed the time entries, concludes that 60% of the requested amount, or $6,391.90, fairly represents the time that would have been required if the same issues had arisen some years down the road after counsel had acquired additional experience with them.  Yet the question remains whether the debtor should have to pay even that amount when the contract for legal services did not <u>clearly</u> inform her that the law firm might be billing her additional amounts for getting to confirmation.

      Clearly, competing interests are at stake.  Good attorneys should be fairly compensated for work that benefits the client—otherwise they will not remain in business for long.  At the same time, clients are entitled to a clear statement of the fee arrangement and the services to be provided.  The attorney is the one who is knowledgeable about legal fees and the services likely to be required;  the client typically is not.  "Plain English" contracts may not be easy to draft, but Congress obviously expected attorneys representing consumer debtors in bankruptcy to provide as much clarity as possible. § 528(a)(1),

13

Bankruptcy Code. The contract here falls short of that goal. The question is whether that deficiency should result in a complete disallowance of the requested additional fees, especially as even the debtor did not go that far at the hearing. The debtor acknowledged that she had been ably represented and that she appreciated the services she had been provided. At the same time, she understandably did not wish to see her already-tight financial circumstances made worse by having to pay a huge, unexpected bill.

Under the circumstances, the court concludes that an equitable result would be a further 20% reduction in the amount to be approved. The resulting $5,113.52 in fees provides significant compensation to the attorney while recognizing the hardship to the client from the unexpected bill. The court will also approve the postage and copying costs of $55.72, for a total of $5,169.24 in addition to the $3,000.00 already paid. The court will not, however, authorize payment of the approved fees at this time through the plan because payment would reduce the dividend to unsecured creditors, and unsecured creditors were not given any notice that granting the application would have that effect. The debtor, after discussing her financial circumstances with her attorneys, may be in a position to amend her plan to pay the approved fees, or some portion of them through the plan; otherwise, payment will have to await completion of the plan. The provision in the fee agreement obligating the debtor to pay 18% interest per annum on "unpaid bills" after 30 days shall not apply during the plan period, and amounts approved by the court, but not paid through the plan, shall not

accrue interest earlier than the date the trustee files a report of completion of plan payments, or the case is dismissed, whichever occurs first.[8]

A separate order will be entered consistent with this opinion.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

Copies to:

Susan A. Robinson
25938 Priesters Pond Drive, #D
South Riding, VA 20152
Debtor

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr., P.C.
122 N. Alfred Street
Alexandria, VA 22314
Counsel for the debtor

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA 22314
Chapter 13 trustee

---

[8] The court also strikes from the fee agreement the provision that representation of the debtor for other matters in the case (excluding adversary proceedings) "will require a separate retainer" — if by "retainer" is meant an up-front payment—since counsel is required to appear at all hearings in the case and may not condition such appearance on payment of fees in advance.