UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
      SUSAN A. ROBINSON           )        Case No. 06-10618-SSM
                                          )        Chapter 7
            Debtor        )

**MEMORANDUM OPINION**

A hearing was held on August 13, 2008, on the order entered July 15, 2008, for the Law

Office of Cathleen Tucker, P.C., to show cause why it should not be held in civil contempt for

violation of the automatic stay by repeatedly sending bills to the debtor for prepetition legal fees.

The debtor was present by its shareholder, Cathleen Tucker, and was represented by counsel.

The respondent was present in person and was represented by counsel.  For the reasons stated,

the court will find the law firm in contempt and will require it to pay the debtor's reasonable

legal fees incurred in bringing the matter before the court.

Background

Susan A. Robinson ("the debtor") filed a voluntary petition in this court on June 12,

2006, for adjustment of her debts under chapter 13 of the Bankruptcy Code.  A modified plan

filed by the debtor on August 5, 2006, was confirmed on September 28, 2006, over the objection

of the chapter 13 trustee and Ross R. Robinson, the debtor's former husband.  The plan, which

1

requires the debtor to pay the chapter 13 trustee $89,435 over its five year term, projects a

dividend to unsecured creditors of 24 cents on the dollar.[1]

Prior to the chapter 13 filing, the debtor had been engaged in litigation with Mr.

Robinson in the Circuit Court of Fairfax County, Virginia, seeking to overturn, and to enforce an

oral modification of, a property settlement agreement that had been ratified by a divorce decree

some years earlier.  The debtor was represented in that litigation by attorney Cathleen Tucker,

who is a solo practitioner.  At a hearing on June 5, 2006, the state court made rulings adverse to

the debtor and set a further hearing for June 30, 2006.  Believing that the June 5th ruling left her

with no choice except to file for bankruptcy, the debtor (who had consulted with a bankruptcy

attorney in May), filed her petition on June 12th, but did not tell Ms. Tucker that she had done

so.  A notice of the commencement of the case was, however, mailed to the law firm by the

Bankruptcy Noticing Center on June 15th.[2]

On her schedules, the debtor listed Ms. Tucker as the holder of a liquidated, non-

contingent, undisputed claim for legal fees in the amount of $17,000.  Ms. Tucker's firm filed a

---

[1]  As it turns out, the trustee is actually paying unsecured claims at 55 cents on the dollar.  The standard form of chapter 13 plan in this district is a "pot plan" rather than a "percentage plan." *See*, *In re Witkowski*, 16 F.3d 739, 741 & n.11 (7th Cir. 1994) (explaining the difference). That is, unsecured creditors, rather than being promised a specific percentage payment of their claims, share pro rata in the "pot" that remains after payment of secured and priority claims.  If the claims actually filed are less than the debtor estimated—which can easily occur if one or more creditors do not file claims—then unsecured creditors may receive more than projected by the plan.

[2]  There was some confusion on this point at the hearing, both the court and the parties mistakenly believing that Ms. Tucker's firm had not been included on the initial list of creditors and had only been added later by amendment to the schedules.  However, the certificate of mailing on the notice of commencement of case (Doc. # 6) clearly shows that Ms. Tucker's firm was included on the initial list of creditors, and examination of the three amendments (Doc. # 11, 15, and 18) to the list of creditors reflect that they relate to creditors other than Ms. Tucker.

timely proof of claim in the amount of $16,706.65 and to date has received $3,871.76 from the chapter 13 trustee.  Attached to the proof of claim was a copy of a fee agreement between the debtor and the law firm dated October 27, 2005, as well as three invoices, the most recent of which covered services through May 31, 2006.  Under the fee agreement, Ms. Tucker was to be compensated at the rate of $225.00 per hour, monthly invoices were to be sent to the client, and balances not paid within 30 days were to bear interest at the rate of 18% per annum.

Not included in the proof of claim were amounts reflected on a later invoice dated July 1, 2006, in the amount of $7,794.70 covering services for the month of June.  Of this amount, $3,408.75 represented services performed through the date of the chapter 13 petition and $4,385.95 represented services performed, and disbursements billed, after the date of the chapter 13 filing in preparation for the June 30th hearing.  Ms. Tucker, who disclaimed any personal knowledge of bankruptcy law, testified that she had spoken with two bankruptcy attorneys and understood that her prepetition billings were included in the bankruptcy but believed that the postpetition billing was not.  Although her testimony on the point was not entirely clear, she may have been was under the mistaken impression that the bankruptcy petition had been filed in May. In any event, Ms. Tucker sent the debtor periodic bills showing the balance due (which increased over time as interest was added) on the July 1, 2006, invoice.  The most recent such bill—dated July 15, 2008—showed a balance due of $9,732.97.[3]  None of the bills contained a threat to sue the debtor or to take other specific efforts to enforce payment.  Except for than sending periodic

---

[3]  Of this amount, $7,632.11 represented the unpaid principal balance, while the remaining portion (approximately $2,100) represented interest.  For reasons that are not entirely clear but appear to have resulted from an administrative error, one invoice sent to the debtor—dated June 9, 2008, in the amount of $14,120.59—contained the balances due on the two invoices that were included in the proof of claim and omitted the July 1, 2006, invoice.

bills, Ms. Tucker did not otherwise communicate with the debtor concerning payment of the fees.

Not surprisingly, the debtor was upset at getting bills for amounts that she believed were included in her bankruptcy—the more so because she believed the unsuccessful outcome of the state court litigation was Ms. Tucker's fault, and she blamed Ms. Tucker for having to file for chapter 13 protection in the first instance.  She further testified that since she started receiving invoices from Ms. Tucker her blood pressure has risen and her doctor has advised her that she needs to reduce stress in her life.  The debtor complained to her bankruptcy attorneys, who sent emails and letters to Ms. Tucker on three different occasions, with no response by Ms. Tucker whatsoever, prior to filing the present motion for contempt.  The first was sent on April 6, 2007. It notified Ms. Tucker of the bankruptcy filing, quoted pertinent language from § 362(a) of the Bankruptcy Code, and, in bold-faced and underlined text, advised her, "A violation of these prohibitions may be considered contempt of court and punished accordingly."  Ms. Tucker did not reply.  A follow-up email sent June 7, 2007, reiterated that the sending of the invoices violated the automatic stay, asked Ms. Tucker to confirm receipt of the notice, and demanded that she cease and desist from attempting to collect the debt.  Ms. Tucker again did not reply. When the debtor continued to receive invoices, her attorneys wrote to Ms. Tucker a final time on June 18, 2008, once more with no response.

<u>Discussion</u>

A.

The filing of a bankruptcy petition creates an automatic stay of a broad range of creditor activity, including "any act to collect, assess, or recover a claim against the debtor that arose

4

before the commencement of the case." § 362(a)(6), Bankruptcy Code.  The range of conduct

prohibited by § 362(a)(6) is expansive, ranging from informal conduct like sending letters or

making phone calls to formal conduct such as initiating judicial proceedings.  *In re Draper*, 237

B.R. 502, 505 (Bankr. M.D. Fla. 1999).  A violation of the automatic stay may be redressed by

the bankruptcy court under its civil contempt powers.  § 105(a), Bankruptcy Code;  *Burd v.

Walters (In re Walters)*, 868 F.2d 665 (4th Cir. 1989).  Additionally, an individual injured by a

willful violation of the automatic stay has a statutory claim for the recovery of compensatory and

punitive damages and reasonable attorney's fees.  § 362(k), Bankruptcy Code; *Budget Serv. Co.

v. Better Homes of Va.*, 804 F.2d 289 (4th Cir.1986).

A violation of the stay is willful if (1) the creditor knows of the bankruptcy and (2)

intentionally undertakes an action that violates the stay, even if the creditor is not aware that the

stay applies to the action.  *In re Peterkin*, 102 B.R. 50, 53-54 (Bankr. E.D. N.C. 1989).  Put

another way, ignorance of the legal effect of the automatic stay is no excuse.  The burden is on

the creditor to determine the scope of the automatic stay once she has learned of a debtor's

bankruptcy, and she takes the risk of being sanctioned if she fails to seek clarification from the

bankruptcy court.  *In re Outlaw*, 66 B.R. 413, 419-420 (Bankr. E.D. N.C. 1986).

### B.

It is unfortunate that this matter was not promptly addressed and resolved when Ms.

Tucker received the first communication from the debtor's attorney.  The root of the problem

was Ms. Tucker's mistaken belief that because the invoice for the June 2006 services was dated

after the bankruptcy filing, those billings were not included in the bankruptcy.  It is true that the

debtor was also mistaken in believing that all of the June 2006 services were included in the

5

bankruptcy, but that does not excuse or extenuate Ms. Tucker's mistake.  Ms. Tucker, after all, is

a lawyer: to whatever extent she may not have been personally familiar with bankruptcy law, she

certainly had ample ability to research the law.  There is no dispute that Ms. Tucker had

knowledge of the bankruptcy case, since she filed a timely proof of claim.  There is also no

question that she repeatedly violated the automatic stay by intentionally sending the debtor

invoices that included charges for prepetition services.  What is most astonishing is that the

continued protests from the debtor's attorneys did not prompt even the professional courtesy of a

reply, let alone the slightest effort by Ms. Tucker to re-examine whether she was right in her

legal analysis.  The case law, in any event, is clear that ignorance of the legal effect of the

automatic stay is not an excuse for violation of the stay, and Ms. Tucker had the burden of

seeking clarification once she received the cease and desist notice from the debtor's attorneys.

Because she did not, and because Ms. Tucker knew of the bankruptcy filing and intentionally

sent the debtor invoices that included charges for pre-petition legal services, her actions

constitute a willful violation of the automatic stay.

C.

Ms. Tucker argues that because the invoices sent to the debtor did not contain a threat to

sue or take other enforcement action, her actions could not be considered either harassing or

dunning, and therefore did not violate § 362(a)(6) of the Bankruptcy Code.  However, numerous

courts have found that sending bills for prepetition debts, even without threats to sue, is a

violation of the automatic stay.  *See In re Wills*, 226 B.R. 369, 378 (Bankr. E.D. Va. 1998); *In re*

*Dayley*, 349 B.R. 825 (Bankr. D. Idaho 2006); *In re Draper*, 237 B.R. 502 (Bankr. M.D. Fla.

1999); *In re Meis-Nachtrab*, 190 B.R. 302 (Bankr. N.D. Ohio 1995).  By sending the invoices to

6

the debtor, Ms. Tucker effectively sought payment of the prepetition amounts outside of the bankruptcy case, and as such, her actions violated the automatic stay under § 362(a)(6).

Finally, Ms. Tucker points to *In re Conti*, 42 B.R. 122 (Bankr. E.D. Va. 1984) as supporting her argument that she should not be held in contempt. *Conti*, however, is distinguishable on a number of grounds. In that case, the debtor moved to have the Internal Revenue Service held in contempt for violation of the automatic stay after the IRS levied upon the debtor's wages to collect on a delinquency owed for income taxes after the debtor filed a bankruptcy petition. *Conti*, 42 B.R. at 127. The court refused to find the Internal Revenue Service in contempt because it found that the IRS' violation of the automatic stay was inadvertent and therefore not willful, and because the IRS released the levy of the debtor's wages as soon as it was informed the debtor had filed bankruptcy. *Id.* at 128.

In contrast, here Ms. Tucker did not send the debtor invoices for prepetition services inadvertently. All of the invoices Ms. Tucker sent the debtor included charges incurred before the debtor filed her petition on June 12, 2006. Even if based on a misunderstanding of the law or of when the debtor filed her bankruptcy petition, the inclusion of the prepetition charges and the sending of the invoices were not due to a clerical error. Further, and perhaps most tellingly, Ms. Tucker, unlike the IRS in *Conti*, did not promptly act to correct her actions when notified multiple times by the debtor's counsel that the sending of the invoices violated the automatic stay. Thus, *Conti* is not controlling on whether or not Ms. Tucker should be held in contempt.

### D.

There remains the issue of an appropriate sanction. Civil contempt is remedial and coercive in nature, unlike criminal contempt, the purpose of which is to punish. Sanctions for

civil contempt may be compensatory or coercive, or both. *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 168 B.R. 285, 288 (Bankr. S.D. N.Y. 1994). A compensatory sanction, as the name implies, "attempts to indemnify the injured party for the damage caused by the contempt." *Id.* Coercive sanctions, such as fines or imprisonment, seek to compel compliance with the court's order. *Id.*

If approached purely as civil contempt, compensatory damages, at least in this circuit, cannot include emotional distress. *Walters*, 868 F.2d. at 670 ("[N]o authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none."). As noted, however, Congress has provided in § 362(k) a statutory remedy for violations of the automatic stay that most courts have concluded allows recovery for emotional distress. *See Green Tree Servicing, LLC v. Taylor*, 369 B.R. 282, 288 (Bankr. S.D. W.Va. 2007). To recover for emotional distress, however, the debtor must establish she suffered significant harm and a causal connection between the harm and the violation of the stay. *Id.* The difficulty in this case is that, while the debtor convincingly testified that the receipt of Ms. Tucker's invoices caused her considerable stress and anxiety, it seems likely that she would have suffered exactly the same level of distress even had Ms. Tucker scrupulously observed the automatic stay by only billing for the services provided after the date of the bankruptcy filing. The debtor, as noted, believed that the entire bill was included in her bankruptcy, and at bottom she did not believe she should have to pay anything to Ms. Tucker, because she blamed Ms. Tucker losing the domestic relations case and effectively forcing her into bankruptcy. Accordingly, even though emotional distress damages may be recoverable for violations of the automatic stay, the court declines to do so here, because there is simply no way

8

of parsing out that portion of the distress occasioned by the inclusion of prepetition charges on the invoices from those resulting simply from being invoiced.

Compensatory sanctions are, however, appropriate for the legal fees reasonably incurred by the debtor in bringing this matter before the court, particularly given the several notices given to Ms. Tucker before the contempt motion was brought, and her complete failure to respond to them. Debtor's counsel has filed with the court an affidavit, supported by time records, reflecting $2,342.50 in fees and $34.42 in expenses—for a total of $2,376.92— for the period from June 17, 2008 (the day the debtor contacted her attorneys prior to the third notice) through August 13, 2008, the date of the hearing. The time records reflect 10.2 hours of attorney time (billed at $225 and $200 per hour) and 3.5 hours of paralegal time (billed at $85.00 per hour). The hourly rates are well within norms for Northern Virginia, and the time expended is reasonable for the services provided. None of the additional factors specified by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), *cert. denied* 439 U.S. 934 (1978), warrants adjustment to the lodestar computation. *See Anderson v. Morris*, 658 F.2d 246 (4th Cir. 1981) (instructing that in applying 12-factor test of *Barber v. Kimbrell's*, court should first multiply number of hours reasonably expended by the customary hourly rate to determine an initial amount for fee award, and then adjust the fee on the basis of the other factors.). Accordingly, the court will award compensatory sanctions against Ms. Tucker in the amount of $2,376.92.

The debtor also asks—to avoid any further controversy—that the court make an express ruling as to what portion of the July 1, 2006, invoice reflects post-petition services. Based on the invoice itself, it is clear that only $4,385.95 represents services performed after the date of the

9

bankruptcy filing.  It would therefore not violate the automatic stay for Ms. Tucker to send the

debtor periodic invoices for those charges, with interest at 18% per annum, as provided in the fee

agreement.[4]

A separate order will be entered consistent with this opinion adjudging Ms. Tucker's firm

in civil contempt and awarding sanctions, payable to the debtor within 30 days, in the amount of

$2,376.92 and prohibiting the sending of any further invoices unless Ms. Tucker has personally

reviewed them and has verified that only the amounts determined by this opinion to be post-

petition charges are included.

Date: _____          _____
                                                                Stephen S. Mitchell
Alexandria, Virginia                                   United States Bankruptcy Judge

---

[4]  The court does note that Ms. Tucker's invoices compute the interest at 1.5% monthly on a balance which includes accumulated interest from prior months.  Because of the compounding effect, this results in an effective interest rate that exceeds the "18% per annum" stated in the fee agreement.  If properly calculated at 18% per annum from July 31, 2006 on the $4,385.95 in billings for post-petition services, the simple interest (using a 365 day year) through the date of this opinion would amount to $1,715.21, for a total due of $6,101.16.

Copies to:

Susan A. Robinson
25938 Priesters Pond Drive, #D
South Riding, VA 20152
Debtor

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr., P.C.
122 N. Alfred Street
Alexandria, VA  22314
Counsel for the debtor

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

George E. Tuttle, Jr., Esquire
1225 Martha Custis Dr., Suite 103
Alexandria, VA  22302-2017
Counsel for respondent

Law Office of Cathleen Tucker, P.C.
Attn: Cathleen Tucker, Esquire
5641 Burke Centre Parkway, Suite 200
Burke, VA 22015
Respondent